IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ALOMA HOLSTEN,                          )
     Plaintiff,                        )
                             )
           v.                        )        Civil Action No.  3:24CV844 (RCY)
                             )
BARCLAYS SERVICES LLC,                  )
     Defendant.                        )
_____ )

## MEMORANDUM OPINION

This is an employment discrimination case in which Plaintiff Aloma Holsten ("Plaintiff" or "Holsten") brings this action alleging that while an employee for Defendant, she faced sex discrimination, a hostile work environment, and retaliation in violation of both Title VII of the Civil Rights Act of 1964 ("Title VII") and the Virginia Human Rights Act ("VHRA").  This case is presently before the Court on a Motion to Compel Arbitration, Stay the Action, and Strike Plaintiff's Sexual Harassment Allegations ("Motion"), ECF No. 8, filed by Defendant Barclays Services, LLC ("Defendant").[1]  The Motion has been fully briefed.  The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process.  E.D. Va. Loc. Civ. R. 7(J). For the reasons stated herein, the Court will deny Defendant's Motion.

## FACTUAL ALLEGATIONS

Because Defendant has not yet filed its responsive pleading in this matter, the following factual background is derived from Plaintiff's allegations in her Amended Complaint.  *See*

---

[1] Plaintiff's Amended Complaint, ECF No. 5, named two defendants.  However, Plaintiff voluntarily dismissed Defendant Barclays Bank Delaware d/b/a Barclays Group and Barclays, LLC, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), *see* Notice of Voluntary Dismissal, ECF No. 22, leaving only the present Defendant Barclays Services, LLC.

*generally*, Am. Comp., ECF No. 5.  Holsten began working for Defendant on October 4, 2021, as the Director Head of Collections Strategic Operations.  *Id.* ¶ 14.  In this position, Holsten "met or exceeded expectations" and was soon promoted to Director Head of Collections and Recovery Operations in September 2022.  *Id.* ¶ 15.  With this expansion of her role, Holsten fell under the supervision of Defendant's Chief Operating Officer Christopher Trill ("Trill").  *Id.* ¶ 17.  Trill, a male supervisor, was responsible for employment decisions such as terminations and hirings.  *Id.* ¶¶ 17, 19.  Trill's supervisors were Danny Nealon ("Nealon"), Defendant's Chief Executive Officer, and Steve Allen ("Allen"), Defendant's Chief Corporate Officer.  *Id.* ¶¶ 31–33.

Under Trill's supervision, Holsten's work environment allegedly grew increasingly hostile from Trill's regular "acts of aggression, belittlement, dismissal, and marginalization."  *Id.* ¶¶ 21–22.  Holsten initially attributed Trill's "hostility" to "poor leadership and management skills."  *Id.* ¶ 22.  Later, however, she "started to believe that Trill's hostility toward her was on the basis of her sex."  *Id.* ¶ 22.

According to Plaintiff, Trill's hostile behavior began in January 2023 and continued throughout 2023.  *Id.* ¶ 24.  In late January 2023, during a performance evaluation with Trill, Holsten offered ideas for "improving Defendant['s] business" and was met with dismissive comments by Trill such as "what does your husband say about that?"  *Id.* ¶ 23.  Trill's behavior included ignoring Plaintiff's requests for assistance, dismissing Plaintiff's contributions during meetings, and insulting Plaintiff's decision making.[2]  *Id.* ¶ 26.  Plaintiff alleges Trill would verbally scold and discipline her in front of male colleagues.  *Id.* ¶ 25.  Trill also told Plaintiff's male co-workers that she does not "push enough," canceled Plaintiff's one-on-one and training meetings, and responded to a group email implying that Ms. Holsten was stupid.  *Id.* ¶ 26.  Plaintiff posits

---

[2] Making comments like, "I would not make that call."  Am. Compl. ¶ 26.

that she never observed or learned about Trill treating her male coworkers in a similar manner. *Id*. ¶¶ 25–27.

Despite the emotional strain on Plaintiff, she continued to perform her duties satisfactorily. *Id*. ¶ 28. Due to Trill's mistreatment, Plaintiff complained to Defendant's Human Resource department ("HR") that Trill had violated Defendant's sexual discrimination and harassment policies. *Id*. ¶ 29. Plaintiff alleges that she was not the first female coworker to make such a complaint against Trill to HR. *Id*. ¶ 30. Rather, two other female coworkers had made similar complaints, and Trill's supervisors, Nealon and Allen, allegedly "became aware that Ms. Holsten and other female employees were complaining of Trill's discriminatory and harassing conduct." *Id*. ¶¶ 30, 33.

In August 2023, nearly three months after her initial complaint to HR, the department interviewed Plaintiff about Trill's alleged behavior. *Id*. ¶ 36. The HR representative informed Holsten that Trill "had been made aware of her HR complaint." *Id.* ¶ 37. Plaintiff alleges this notification prompted Trill's subsequent retaliatory "campaign" against Holsten. *Id*. ¶¶ 37–39. As a result, Plaintiff was excluded from meetings, and her work-related correspondences were disregarded by Trill. *Id*. ¶ 39. During this time, a female coworker informed Holsten that Trill had said he was "going to tear Aloma's world apart" and was introducing Holsten to his male colleagues as "the person who gets my coffee." *Id*. ¶ 40.

Later, in November 2023, Trill reduced Plaintiff's supervisory role from eight direct reports to three. *Id.* ¶ 41. Plaintiff explains that this change put her at risk for termination because Plaintiff's role as a director requires her to have at least seven direct reports. *Id*. ¶ 41. During that same time, Trill allegedly transferred Plaintiff's duties to other employees in an effort to diminish

her role in Defendant's company, discussed changes to Plaintiff's team to her peers, but not to Plaintiff, and criticized Plaintiff in email correspondence with peers and HR employees. *Id.*

Thereafter, on December 13, 2023, Holsten complained a second time to HR about Trill's retaliatory behavior. *Id.* ¶ 42. At this point, nearly seven months after her initial HR complaint, Holsten had received no update or outcome. *Id.* ¶ 43. Despite Holsten's two HR complaints, along with those of her female colleagues, "nothing in the environment changed for the better." *Id.* ¶¶ 30, 33, 45.

After exhausting administrative routes of relief, on January 10, 2024, Holsten filed a Charge with the Equal Employment Opportunity Commission ("EEOC") and a Complaint with the Office of the Virginia Attorney General's Office of Civil Rights ("OCR"). *Id.* ¶ 46. The following day, Defendant informed Holsten that her first HR complaint was "unsubstantiated." *Id.* ¶ 47. Later that month, Trill, allegedly aware of her Charge and Complaint to the EEOC and OCR, assigned Plaintiff a low rating for her 2023 performance evaluation. *Id.* ¶ 48. In his report, Trill incorrectly cited Plaintiff as responsible for a negative act committed by her male coworker. *Id.*

Plaintiff represents that Trill's negative performance evaluation affected her emotionally as well as her status within Defendant's company. *Id.* ¶¶ 48–52. Due to this low rating, Holsten did not receive a raise and had her bonus reduced. *Id.* ¶ 48. Later, in July 2024, Trill informed Holsten that she was no longer eligible for a promotion to Managing Director, a promotion for which she was apparently eligible prior to her Charge and Complaint to the EEOC and OCR. *Id.* ¶ 52. The culmination of this discriminatory behavior, retaliation, and loss of compensation impacted Holsten, causing "continuous anxiety and emotional distress." *Id.* ¶ 49. Defendant terminated Trill's employment "more than a year" after the start of his alleged hostile conduct. *Id.* ¶ 53.

## II. RELEVANT PROCEDURAL POSTURE

On January 10, 2024, Plaintiff filed a Charge of Discrimination with the EEOC.  Am. Compl. ¶¶ 6, 46, ECF No. 5.  Thereafter, on August 29, 2024, Holsten received her right-to-sue letter from the EEOC.  *Id*. ¶ 9.  Plaintiff filed her initial Complaint on November 26, 2024, within 90 days of her receipt of the right-to-sue letter.  *Id*. ¶ 10; ECF No. 1.

Plaintiff filed her Amended Complaint on December 27, 2024.  ECF No. 5 ("Am. Compl.").  On the same day, Defendant filed the instant Motion, ECF No. 8, and a Memorandum in Support thereof.  Mem. Supp., ECF No. 11.  On January 10, 2025, Plaintiff filed her Opposition to Defendant's Motion, Resp. Opp'n, ECF No. 19, and on January 16, 2025, Barclays filed its Reply.  Reply, ECF No. 20.  On February 26, 2025, Defendant filed a Motion for Extension of Time to File Answer, ECF No. 23, which the Court granted until 21 days after its decision on the instant Motion, which is ripe for review.

## III. STANDARD OF REVIEW

### A.  Motion to Compel Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, "governs the rights and responsibilities of the parties with respect to an arbitration agreement," *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 342 (4th Cir. 2009), and represents "a liberal federal policy favoring arbitration agreements."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 712 (4th Cir. 2015) ("The FAA manifests an emphatic federal policy in favor of arbitral dispute resolution . . . and requires that courts rigorously enforce agreements to arbitrate." (citations omitted)).  "Pursuant to th[is] liberal policy, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of

waiver, delay, or a like defense to arbitrability.'" *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 273–74 (4th Cir. 1997) (quoting *Moses H. Cone*, 460 U.S. at 24–25).

The party seeking to compel arbitration under the FAA bears the burden to demonstrate that there is a written agreement that includes an arbitration provision which purports to cover the dispute. *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002); *see Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001). "When parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings" pursuant to 9 U.S.C. § 3 "and compel arbitration in accordance with the agreement's terms" pursuant to 9 U.S.C. § 4. *Murray v. United Food & Com. Workers Int'l Union*, 289 F.3d 297, 301 (4th Cir. 2002).

"The Supreme Court has concluded that arbitration agreements are enforceable 'even when the claims at issue are federal statutory claims, *unless* the FAA's mandate has been "overridden by a contrary congressional command."'" *Espin v. Citibank, N.A.*, 126 F.4th 1010, 1016 (4th Cir. 2025) (emphasis added) (quoting *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012)). One such example where the FAA's mandate has been overridden by Congress is the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"). *See* 9 U.S.C. 401, *et seq.*

**B. Motion to Strike**

A "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). This standard "affords district courts significant discretion in determining whether to strike certain material from pleadings." *Devers v. City of Huntington*, 2019 WL 4281936, at *2 (S.D.W. Va. Sept. 10, 2019) (citing *Scherer v. Steel Creek Prop. Owners Ass'n*, 2014 WL 813824, at * 1 (W.D.N.C. Mar. 3, 2014)). That said, courts "should

use Rule 12(f) sparingly, as motions to strike are generally viewed with disfavor." *Jenkins v. Aylor*, 2016 WL 2908410, at *11 (W.D. Va. May 17, 2016) (citing *Waste Mgmt. Hldgs., Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001)); *see Zamma Can. Ltd. v. Zamma Corp.*, 2020 WL 7083940, at *23 (E.D. Va. Dec. 3, 2020). Accordingly, in considering a motion to strike, "the court must view the [challenged] pleading . . . in a light most favorable to the pleader." *M.T. ex rel. Hayes v. Medley*, 2014 WL 1404527, at *1 (D. Md. Apr. 9, 2014).

In turn, Rule 12(f) motions should be denied "unless the challenged allegations have *no* possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *Bailey v. Fairfax Cnty.*, 2010 WL 5300874, at *4 (E.D. Va. Dec. 21, 2010) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1382 (3d ed. 2004)).

## IV. DISCUSSION

Plaintiff levels three counts against Defendant in violation of both Title VII and the VHRA: Count I, a sex discrimination claim, Am. Compl. ¶¶ 54–62, Count II, a hostile work environment claim, *id.* ¶¶ 63–74, and Count III, a retaliation claim, *id.* ¶¶ 75–84. Defendant seeks to compel arbitration on the basis that Plaintiff does not sufficiently allege a sexual harassment dispute that would trigger the EFAA. Mem. Supp. 16–19.[3] Specifically, Defendant argues that sex discrimination is distinct from sexual harassment and is insufficient to trigger the EFAA. *Id.* at 11. In particular, Defendant contends that Plaintiff's sex discrimination claim fails to implicate the EFAA and further argues that Plaintiff's hostile work environment claim fails because Plaintiff does not allege that any of the conduct was "sexually motivated" or had a sexual connotation. *Id.*

---

[3] Defendant's memorandum in support of its motion is filed at ECF No. 11. In citing to this filing and Defendant's reply, ECF No. 20, the Court uses the pagination assigned by the CM/ECF system, and not any conflicting pagination appearing on the originally filed documents.

at 12–14.  For those reasons, Defendant posits that Plaintiff fails to state a claim sufficient to avoid arbitration and requests that the Court both stay the case pending arbitration and strike any instance where Plaintiff alleges "sexual harassment".  *See generally* Mem. Supp, Reply.

Plaintiff disagrees and argues she has sufficiently stated a sexual harassment dispute under the EFAA through both her sexual discrimination and hostile work environment claims.  Resp. Opp'n 8–11.  Therefore, Plaintiff argues that the Court should deny Defendant's motion on both fronts.  *Id.* at 18–20.

First, the Court will decide what standard is appropriate to determine whether the EFAA applies to Plaintiff's Amended Complaint.  The Court will then assess whether, under the proper standard, Plaintiff sufficiently states a sexual harassment dispute to invoke the EFAA.  Should the Court find that the EFAA applies, then the Court will decide whether any of Plaintiff's claims must be referred to arbitration.  Lastly, the Court will examine whether it is appropriate to strike any portions of Plaintiff's Amended Complaint.

## A.  EFAA

As it stands, the parties disagree as to what kinds of allegations invoke the EFAA.  To date, the Fourth Circuit has not addressed this particular issue.

Enacted in March 2022, the EFAA amended the FAA, providing in part:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute[,] . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to . . . the sexual harassment dispute.

9 U.S.C. § 402(a); *see Mangum v. Ross Dress for Less, Inc*., 777 F. Supp. 3d 519, 527 (E.D.N.C. 2025).  Whether the EFAA applies to a matter, precluding arbitration, is "determined by the court, rather than an arbitrator," 9 U.S.C. § 402(b), and does "not apply retroactively to claims that

accrued before its enactment on March 3, 2022."[4]  *Bopda v. Comcast of the Dist.*, *LLC*, 2024 WL 399081, at *1 (4th Cir. Feb. 2, 2024).  Therefore, it remains the Court's duty to determine whether Plaintiff has alleged a sufficient sexual harassment dispute, so as to preclude arbitration in the present case.

In relevant part, the EFAA defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."  9 U.S.C. § 401(4).  Aside from this definition, courts have little guidance on what precisely constitutes a "sexual harassment dispute."  As Defendant points out, the Fourth Circuit "has yet to address the contours of the EFAA."  Def.'s Mem. Supp. 17.  However, all fellow district courts within the Fourth Circuit have turned to a clearer standard to determine what constitutes a "sexual harassment dispute" under the EFAA—that employed in a Title VII hostile work environment claim.[5]  *See Gathers v. K&K Fam. Ventures, LLC*, 2025 WL 1032252, at *3–4, 7 (D.S.C. Feb. 19, 2025), *R&R adopted in relevant part, rejected in part by*, 2025 WL 892773 (D.S.C. Mar. 24, 2025) (finding the EFAA applicable when plaintiff sufficiently alleged a Title VII hostile work environment claim); *accord Mangum*, 777 F. Supp. 3d 519; *Bray v. Rhythm Mgmt. Grp., LLC*, 2024 WL 4278989 (D. Md. Sept. 24, 2024); *Mulugu v. Duke Univ. Sch. of Med.*, 2024 WL 3695220 (M.D.N.C. Aug. 7, 2024), *R&R adopted by*, 2024 WL 3991682 (M.D.N.C. Aug. 7, 2024).  Indeed, in *Mangum*, the plaintiff did not allege a Title VII hostile work environment claim, however, the

---

[4] The accrual date of Plaintiff's dispute is not at issue in this case as Trill became Plaintiff's immediate supervisor in September of 2022, Am. Compl. ¶ 17, (with all relevant conduct and EEOC Charge occurring thereafter) which is squarely after the EFAA accrual deadline. *See Bopda*, 2024 WL 399081, at *1.

[5] Under federal law, namely Title VII of the Civil Rights Act of 1964, the Fourth Circuit has recognized two causes of actions that constitute sexual harassment: (1) a hostile work environment claim, and (2) *quid pro quo* sexual harassment.  *See Nixon v. Kysela Père et Fils, LTD*, 2024 WL 3666166, at *3 (4th Cir. Aug. 6, 2024) (first citing *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 207 (4th Cir. 2014); and then citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 752 (1998)).  Here, Plaintiff alleges a Title VII hostile work environment claim as Count II of her Amended Complaint.  Am. Compl. ¶¶ 63–74.

district court, on its own accord, used the Title VII hostile work environment standard to determine whether the matter qualified as a "sexual harassment dispute" under the EFAA. *Mangum*, 777 F. Supp. 3d at 529–531.

The adoption of the Title VII framework to determine whether a "sexual harassment dispute" exists under the EFAA extends beyond the Fourth Circuit's district courts. In *Olivieri v. Stifel*, the Second Circuit affirmed the lower court's decision to deny defendant's motion to compel arbitration in light of the plaintiff's alleged hostile work environment claims.[6] 112 F.4th 74, 78 (2d Cir. 2024). Although the precise issue on appeal revolved around the accrual requirement, the Second Circuit acknowledged the EFAA applies to claims alleging hostile work environments. *Id.* at 92. Similarly, in *Memmer v. United Wholesale Mortgage, LLC*, the United States Court of Appeals for the Sixth Circuit reversed the district court's judgment compelling arbitration, by the same logic. *See* 135 F.4th 398, 406–07 (6th Cir. 2025) ("[T]he parties do not dispute the applicability of the EFAA to Memmer's case, which includes allegations of [Title VII hostile work environment] sexual harassment.").

The Title VII framework appears to be preferred by district courts within the Fourth Circuit, as well as some other out-of-circuit courts. However, some district courts have looked to state law to determine whether Plaintiff stated a "sexual harassment dispute." Generally, courts who have granted motions to compel arbitration under a hostile work environment framework did so under state law. *See, e.g. Van De Hey v. EPAM Sys., Inc.*, 2025 WL 829604 (N.D. Cal. Feb. 28, 2025) (granting defendant's motion to compel arbitration by finding plaintiff implausibly pled a sexual harassment claim under the California Fair Employment and Housing Act); *Prerna Singh v.*

---

[6] *Olivieri* plaintiff filed claims of "hostile work environment" under both Federal law (Title VII) and State law (New York State Human Rights Law). 112 F.4th at 77.

*MeetUp LLC*, 750 F. Supp. 3d 250 (S.D.N.Y. Aug. 22, 2024) (granting defendant's motion to compel arbitration by finding plaintiff implausibly pled a sexual harassment claim under the New York State Human Rights Law and the New York City Human Rights Law).

Defendant contends that a sexual harassment dispute under the EFAA necessarily requires conduct that is sexually motivated or has a sexual connotation. Mem. Supp. 16–19. Put differently, Defendant argues that a sexual discrimination claim is insufficient to trigger the EFAA. *Id.* In support of its distinction between sexual harassment and sexual discrimination, with regards to what constitutes a "sexual harassment dispute" under the EFAA, Defendant suggests that the distinction is not novel and, in fact, is evident in the legislative history of the act. *Id.* at 11. First, Defendant proffers that an earlier iteration of the statutory language included "pre-dispute arbitration agreements related to a 'sex discrimination dispute,'" but was ultimately rejected. *Id.* In reliance on the removal of such language, the Defendant's position is that a "sexual harassment dispute" is distinct and separate from sex discrimination. *Id.* Defendant also suggests that Congress's concern of extending the EFAA to disputes "well beyond sexual harassment disputes" is evidenced by the narrower scope of applicable disputes. Reply, 12.

Plaintiff expectedly disagrees. Instead, Plaintiff identifies legislative history where earlier drafts of the EFAA distinguished between sexual harassment and sexual discrimination— explicitly couching "sexual harassment dispute" as sexual behavior or conduct. Response, 7–8.[7] However, a subsequent amendment to the EFAA broadened the definition[8] of a "sexual harassment

---

[7] Plaintiff provides an initial form of the EFAA that defined a "sexual harassment dispute" as: "(A) Unwelcome sexual advances. (B) Unwanted physical contact that is sexual in nature, including assault. (C) Unwanted sexual attention, including unwanted sexual comments and propositions for sexual activity. (D) Conditioning professional, educational, consumer, health care or long-term care benefits on sexual activity. (E) Retaliation for rejecting unwanted sexual attention." Resp. Opp'n 8 (citing H. Rep. 117-234 (Jan. 28, 2022)).

[8] As referenced *supra*, the current statutory language of the EFAA defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4).

dispute," which Plaintiff argues is a strong indication that a sexual harassment dispute does not require the behavior to be sexually motivated, as Defendant suggests. *Id.* at 8.

The Court will join its sister courts in using the Title VII standard to determine the applicability of the EFAA. In making its determination, the Court considers that Plaintiff's Amended Complaint includes a hostile work environment claim under Title VII and the VHRA.[9] Further, the Court is not persuaded away from using the Title VII hostile work environment framework based on the parties' arguments. Although the parties support their positions with legislative history, the Court finds current case law and the plain language of the statute more instructive on this issue.[10] It is clear to this Court that a Title VII hostile work environment claim, whether specifically alleged or not, lays out a clear, suitable framework to utilize when determining the existence of a "sexual harassment dispute" under the EFAA. In addition to its fellow district courts' use of this standard, the Court also considers the plain language of the statute—that is, a "sexual harassment dispute" is "a dispute relating to conduct that is alleged to constitute *sexual harassment* under applicable *Federal*, Tribal, or State law." 9 U.S.C. § 401(4) (emphasis added).[11]

The Fourth Circuit has repeatedly recognized that a Title VII discrimination claim can arise from allegations of a work environment turned hostile due to sexual harassment. *See Roberts v. Glenn Indus. Grp.*, 998 F.3d 111, 117 (4th Cir. 2021); *see also Kysela*, 2024 WL 3666166, at *3.

---

[9] The Court need not analyze Platiniff's VII and VHRA claim separately because "Plaintiff's Title VII and VHRA discrimination claims are based on the same facts and the statutes are substantially the same." *Sunkins v. Hamptons Roads Connector Partners*, 701 F. Supp. 3d 342, 351–52 (E.D. Va. 2023) (first citing *Abreu v. N. Am. Partners in Anesthesia, LLP*, 2023 WL 5959430, at *10 n.8 (E.D. Va. Sept. 12, 2023); and then citing *Washington v. Offender Aid & Restoration of Charlottesville-Albemarle, Inc.*, 677 F. Supp. 3d 383, 394 n.4 (W.D. Va. June 15, 2023)).

[10] This is particularly true since the legislative background, as presented by the parties, supports both parties' arguments.

[11] The Court need not address Plaintiff's argument that Defendant's internal corporate policy has any impact on the issue. Resp. Opp'n 17–18. The EFAA does not contemplate company policy, instead it looks to "Federal, Tribal, or State law." 9 U.S.C. § 401(4).

It has further solidified that "[a] work environment consumed by remarks that intimidate, ridicule, and maliciously demean the status of women can create an environment that is as hostile as [one] that contains unwanted sexual advances." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 242 (4th Cir. 2000). The Court thus proceeds in its analysis by determining whether Plaintiff sufficiently alleges[12] a sexual harassment dispute by way of her hostile work environment claim.

## B. Plaintiff Sufficiently Alleges a Hostile Work Environment Under Title VII

To establish a *prima facie* case for a hostile work environment under Title VII, a plaintiff must establish that she experienced "offending conduct [that] (1) was unwelcomed, (2) was because of her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (4) was imputable to her employer." *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 716 (4th Cir. 2024); *see also EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009); *Mangum*, 777 F. Supp. 3d at 529–

---

[12] The parties argue, and the Court agrees, that it shall evaluate Plaintiff's claim under the 12(b)(6) standard, and in doing so adopts the district court's reasoning in *Mangum*. *See Mangum*, 777 F. Supp. 3d at 526–28; *see also Newman v. Ambry Genetics Corp.*, 2024 WL 3811606, at *3 (D.S.C. Aug. 14, 2024); *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 586 (S.D.N.Y. 2023).

Federal Rule of Civil Procedure 8 requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* The plaintiff's well-pleaded factual allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). All reasonable inferences that can be drawn from the complaint are drawn in the plaintiff's favor. *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020).

To survive a 12(b)(6) motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

530 (collecting cases).  Additionally, the complainant must plausibly allege that her sex was the "'but for' cause of the alleged harassment." *Cosby*, 93 F.4th at 717.

Although Defendant primarily contests the third element, *see* Mem. Supp. 22–25; Reply 18–20, the Court assesses each element in turn to determine whether Plaintiff has sufficiently alleged a Title VII hostile work environment, and thus, a sexual harassment dispute under the EFAA.

### 1. Unwelcome Conduct

The Court first considers whether the offensive conduct was "unwelcome," the "'gravamen' of any hostile work environment claim." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 314 (4th Cir. 2008) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986)).

At the present juncture, Plaintiff must plead that the offensive behavior she faced from Trill while employed for Defendant was in fact, in the light most favorable to Plaintiff, plausibly unwelcome.  *See id.*  This element "is not a high hurdle." *Strothers v. City of Laurel*, 895 F.3d 317, 328–29 (4th Cir. 2018).  Evidence of "voicing [an] objection" or seeking administrative solutions, such as reporting to a Human Resources department or filing EEOC charges, can suffice to allege that the conduct was unwelcome.  *Strothers*, 895 F.3d at 329; *see also Gathers*, 2025 WL 1032252, at *8; *Bray v. Rhythm Mgmt. Grp., LLC*, 2024 WL 4278989, at *10 (D. Md. Sept. 24, 2024).

Neither party disputes this element's plausibility.  Moreover, the Court easily finds that Plaintiff has alleged sufficient facts that Trill's conduct towards her was "unwelcome."  Namely, the Court considers Plaintiff's two reports to Human Resources regarding Trill's conduct, Am. Compl. ¶¶ 29, 42 (describing May 2023 and December 13, 2023 HR reports), wherein, Plaintiff explicitly told Human Resources that she felt targeted by Trill due to her sex and that she was

14

being retaliated against. *Id.* ¶ 36. In sum, Plaintiff's reports to Defendant's Human Resources department coupled with her January 10, 2024 EEOC Charge, *id.* ¶ 46, are sufficient to establish the conduct as unwelcome at this stage in the proceedings.

2. On the Basis of Sex

Next, the Court turns to whether the offensive conduct was based on Plaintiff's female sex.

This second element of a Title VII hostile work environment claim requires Plaintiff to allege that "the offending conduct. . . was because of her sex." *Cosby*, 93 F.4th at 716. To make this determination, the Court "must view the behavior in light of the social context surrounding the [offensive] actions." *Strothers*, 895 F.3d at 329 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). A Plaintiff may satisfy this element in several ways. *Cosby*, 93 F.4th at 717. She may allege that she was "subjected to sexual advances or propositions," "the individual target of open hostility because of her sex," or that she was "harassed in such sex-specific and derogatory terms as to make it clear that the harasser [was] motivated by general hostility to the presence of women in the workplace." *Id.* (quoting *Ocheltree v. Schollon Prods.*, 335 F.3d 325, 331–32 (4th Cir. 2003)). "Actionable discrimination includes conduct 'because of' the victim's gender, which is broader than conduct of a 'sexual nature.'" *Roberts v. Glenn Industrial Grp.*, 998 F.3d 111, 121 (4th Cir. 2021) (citation modified) (quoting *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 192 n.16 (4th Cir. 2000)).

Indeed, allegations about other women's experiences may be "probative of whether the environment was indeed a sexually hostile one." *Ziskie v. Mineta*, 547 F.3d 220, 225 (4th Cir. 2008); *see also Caldwell v. Leavitt*, 378 F. Supp. 2d 639, 660 (M.D.N.C. 2005), *aff'd in relevant part, rev'd in part*, 289 F. App'x 579 (4th Cir. 2008) (considering the different treatment of male and female employees when determining whether conduct was based on sex); *Bockman v. T & B*

15

*Concepts of Carrboro, LLC*, 2020 WL 5821169, at \*17 (M.D.N.C. Sept. 30, 2020) (considering that defendant had exhibited similar behavior to other female employees, *inter alia*, when examining the totality of the circumstances); *Oncale*, 523 U.S. at 80 (noting that the critical inquiry in determining whether a defendant's conduct is because of sex "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed" (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, R., concurring))).  A social context filled with "sex-specific and derogatory terms," such as offensive stereotypes, suggests that the "harasser is motivated by general hostility to the presence of women in the workplace," and allows the court to find that the conduct is on the basis of sex.  *Oncale*, 523 U.S. at 80–81.

Defendant argues that Plaintiff failed to plausibly allege this element.  Def.'s Reply 18.  Specifically, Defendant contends that Plaintiff fails to allege that Trill's treatment of her is based on sex because Plaintiff failed to allege that the comments were sexual in nature.  *Id.*; Mem. Supp. 19.  Instead, Defendant suggests that any action taken against Plaintiff was because of her work performance, not on the basis of her sex.  Mem. Supp. 23.  In doing so, Defendant correctly notes that only harassment based on the victim's protected class is actionable under Title VII.  Reply 18. (quoting *Abreu*, 2023 WL 5959430, at \*11); *see also Hartsell v. Duplex Prod., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997).

Plaintiff highlights that Trill's comments were laced with negative stereotypes about women, that he treated Plaintiff different than her male colleagues, and that at least two other women complained about Trill's conduct.  Resp. Opp'n 16.

The Court disagrees with Defendant's understanding of this element as it divorces Plaintiff's allegations from their relevant social context.  *See Strothers*, 895 F.3d at 329.  The Court

finds Plaintiff sufficiently alleged that Trill's behavior toward her was on the basis of her sex. Keeping in mind that "harassment need not be accompanied by a contemporaneous statement of animus to be actionable under Title VII—rather, the connection between animus and conduct may be inferred," the Court finds that Plaintiff has, at least at this preliminary stage, sufficiently pled facts suggesting that Trill's conduct was based on her sex. *Strothers*, 895 F.3d at 330–31 (cleaned up). Viewing Plaintiff's allegations in the Amended Complaint within their workplace context, Plaintiff sets out multiple examples of Trill's comments implying negative stereotypes regarding women. For example, Trill asked, "what does your husband say about that?" and referred to Plaintiff as "the person who gets my coffee." Am. Compl. ¶¶ 23, 40. These comments do not exist in a vacuum. Plaintiff alleges that Trill treated her, and allegedly two other people, differently than men in the office. *See* Am. Compl. ¶¶ 27, 30. For example, Plaintiff alleges that Trill made offensive comments to Plaintiff during meetings in front of her male colleagues, *id.* ¶ 25, whom Trill did not target, and excluded her, but not her male colleagues, from business matters. *Id.* ¶¶ 25–27. Trill's comments, coupled with Trill's dissimilar behavior towards male colleagues, are sufficient for the Court to find that, in the light most favorable to Plaintiff, Trill's open hostility toward Defendant "was on the basis of her sex." *Id.* ¶ 22.

### 3. Sufficiently Severe or Pervasive to Alter the Conditions of Employment and Create an Abusive Working Environment

Defendant adamantly argues that Plaintiff's sexual harassment count fails because it is not "severe or pervasive." Mem. Supp. 22–25. In making its argument, Defendant relies on an Eastern District of Virginia case to identify the "three indicia . . . that connotate particularly serious harassment." *Id.* at 16–17 (quoting *Twine v. AT&T, Inc.*, 2024 WL 4677960, at *10 (E.D. Va. Nov. 5, 2025)). While the three indicia laid out in *Twine* are certainly important to this Court's analysis, that list is incomplete.

To adequately allege the third element of a hostile work environment claim, the conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Strothers*, 895 F.3d at 331 (quoting *Ocheltree*, 335 F.3d at 333). This element has both a subjective and an objective component, meaning that a plaintiff must "personally and reasonably believe that the conduct rises to the level of a hostile environment." *Id.* (quoting *Ocheltree*, 335 F.3d at 333). To determine whether an environment is objectively hostile, "the Court must look at all the circumstances, which 'may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Roberts*, 998 F.3d at 118 (quoting *Harris*, 510 U.S. at 23). "No 'single factor is dispositive' because the 'real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships.'" *Bray*, 2024 WL 4278989, at *4 (quoting *Cent. Wholesalers, Inc.*, 573 F.3d at 176).

Defendant argues that Plaintiff's allegations amount to, at most, a callous work environment based not on her sex, but on her performance. Mem. Supp. 23. Notably, Defendant highlights that comments that are sexual in nature, physical touching, and physically threatening actions are absent from Plaintiff's pleadings. Mem. Supp. 23. Defendant maintains that neither of Trill's statements, regarding Plaintiff's husband or her role getting coffee, are enough to give rise to a hostile work environment, alone or combined. Mem. Supp. 23–24.

Plaintiff disagrees, contending that she has plausibly alleged a hostile work environment based on her description of Trill's ongoing harassment that took place from January 2023 until July 2024. Resp. Opp'n 15. Plaintiff highlights that Trill's actions not only included adverse employment actions, but also general hostility towards Plaintiff by, *inter alia*, asking her "what

18

[her] husband says about that," scolding her in front of her male colleagues, complaining to her male colleagues, and excluding her, but not her male colleagues, from business matters. *Id.* at 15–16. Plaintiff also highlights that other females at her workplace complained about Trill's discriminatory behavior. *Id.* at 16. Therefore, Plaintiff contends she has plausibly alleged that Trill's behavior was severe and pervasive. *Id.* at 17; *see also id.* at 15 (noting that whether harassment is sufficiently severe or pervasive is "quintessentially a question of fact" (quoting *Amirmokri v. Balt. Gas & Elec. Co.*, 60 F.3d 1126, 1130–31 (4th Cir. 1995)).

There is no question that Plaintiff subjectively perceived the environment to be hostile or abusive. Plaintiff filed two complaints with Human Resources about Trill's behavior, where she explicitly expressed concerns that Trill was discriminating against her based on her sex, an EEOC charge, and an OCR complaint. Am. Compl. ¶¶ 6–7, 29, 42; *see Bray*, 2024 WL 4278989, at *4 (finding that plaintiff satisfied the subjective requirement because she had repeatedly notified the company's leadership). Therefore, only the objective component of this element is at issue. Below, the Court will assess the parties' arguments in light of the aforementioned factors.

### a. Frequency

In assessing the frequency of discriminatory conduct, the Fourth Circuit has expressed a focus on "consistency of the harassment." *See Laurent-Workman v. Wormuth*, 54 F.4th 201, 211–12 (4th Cir. 2022). While daily exposure to harassing conduct is certainly frequent, "daily hostility is not the essence of a Title VII harassment claim" and therefore not required for conduct to qualify as frequent. *See id; see also National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (stating that hostile work environment claims, by their very nature, involve repeated conduct that may occur over a series of days). Also, a plaintiff need not allege every single instance of discriminatory conduct at this stage in the proceedings. *Miller v. Washington Workplace, Inc.*,

298 F. Supp. 2d 364, 375 (E.D. Va. 2004) (citing *Riley v. Buckner*, 1 F. App'x 130, 134 (4th Cir. 2001)); *Gathers*, 2025 WL 1032252, at *3 (finding allegations that the harassment was "constant" sufficient under a 12(b)(6) standard and any argument that plaintiff's "failure to describe the frequency in terms of number of instances per day, week, month, or year" is an argument better suited for the summary judgment stage).

Plaintiff's Amended Complaint prefaces that the instances of conduct specified are "[un]exhaustive" and "examples" of Trill's conduct toward her.  Am. Compl. ¶¶ 25, 26, 39, 41. Furthermore, Defendant does not explicitly contest this factor.  *See* Mem. Supp. 22–25; Reply 18–20.  Plaintiff points out that she was "regularly subjected to actions of aggression, belittlement, dismissal, hostility, humiliation, and marginalization."  Resp. Opp'n 15; *see* Am. Compl. ¶ 21–26 (alleging Trill's conduct toward Plaintiff occurred "on a regular basis," was "a regular occurrence," and "continued through 2023").   Therefore, the Court is satisfied that Plaintiff has alleged sufficient facts at this stage supporting the frequency of Trill's conduct.

### b. Severity

There are a number of behaviors and factors that make conduct more "severe."   In particular, courts have considered whether the harasser was the plaintiff's supervisor, whether the plaintiff was propositioned, and whether there was any physical touching involved.  *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015) (en banc); *Okoli v. City of Baltimore*, 648 F.3d 216, 221 (4th Cir. 2011); *EEOC v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320, 330 (4th Cir. 2010).

The "status of the harasser may be a significant factor" when "measuring the severity of harassing conduct."  *Boyer-Liberto*, 786 F.3d at 278; *see also Clark v. Sampson Reg'l Med. Ctr.*, 706 F. Supp. 3d 543, 552 (E.D.N.C. 2023) ("[H]arassment by a supervisor tends to be more

serious." (quoting *McIver v. Bridgestone Ams., Inc.*, 42 F.4th 398, 408 (4th Cir. 2022)).  "Simply put, 'a supervisor's power and authority invests his or her harassing conduct with a particular threatening character.'"  *Id.* at 278; *Revak v. Miller*, 2020 WL 3036548, at *7–8 (E.D.N.C. June 5, 2020) (considering the actions by the harasser, plaintiff's supervisor, severe based on the harasser "wielding his power over plaintiff" when making certain employment decisions, such as denying plaintiff's request to attend training, altering plaintiff's timecards, and threatening to change plaintiff's work schedule).

Courts also find that propositioning a plaintiff to engage in sexual activities and physically touching a plaintiff to constitute severe and harassing conduct.  *Sonnier v. Diamond Healthcare Corp.*, 114 F. Supp. 3d 349, 359 (E.D. Va. 2015) (first citing *Okoli*, 648 F.3d at 221; and then citing *Fairbrook Med. Clinic, P.A.*, 609 F.3d at 330).

With respect to this particular factor, Defendant suggests that Plaintiff's claim is foreclosed by *Ziskie v. Mineta*, 547 F.3d 220, 228 (4th Cir. 2008), and *Altman v. McHugh*, 2012 WL 1190271, at *14 (W.D. Va. Apr. 9, 2012), because both courts found that one or two "instances of supervisor harassment, such as . . . [being] told that [a woman] should not work because her husband does a job . . . does not remotely resemble the repeated harassing conduct" needed.  *Ziskie*, 547 F.3d at 228; *Altman*, 2012 WL 1190271, at *14 n.16 (dismissing claim that alleged, *inter alia*, plaintiff "should make cookies and coffee"); Mem. Supp. 23–24.  Plaintiff, in turn, argues that the facts alleged are sufficiently severe and pervasive when considered in their totality.  Resp. Opp'n 15–16.

Although each incident alleged by Plaintiff, standing alone, is certainly not severe enough to plead a hostile work environment, it is the "pervasiveness" of Trill's alleged actions that render his behavior severe.  *See Caldwell*, 378 F. Supp. 2d at 661 (finding conduct severe and pervasive when the court considered, *inter alia*, that female scientists would constantly get screamed at,

berated, and silenced during meetings); *Nesbitt v. Univ. Md. Med. Sys.*, 2013 WL 6490275, at *6 (D. Md. Dec. 6, 2013) (finding conduct severe and pervasive after considering how plaintiff was spoken to in a condescending manner, yelled at in front of other staff members, continuously berated, and repeatedly interrupted). Plaintiff's allegations do not involve physical touching or the proposition of sexual contact, *see generally* Am. Compl., however, that is not fatal to Plaintiff's claim. Likewise, if all Plaintiff alleged were the statements regarding her husband, Am Compl. ¶ 23, and being the coffee person, *id.* ¶ 40, her claim would indeed be foreclosed by *Ziskie* and *Altman*, as Defendant argues. Plaintiff, however, has pleaded more.

Here, Trill was Plaintiff's supervisor. Am. Compl. ¶ 17. Plaintiff alleges that Trill used the authority of this position to reduce her directorial duties, *id.* ¶ 41, transfer her responsibilities to different employees, *id.*, undermine her leadership by looping her out of team conversations, *id.*, and exclude her from meetings. *Id.* Trill's behavior also included, *inter alia*, openly dismissing her during meetings in front of her male colleagues and introducing Plaintiff, the Director Head of Collections and Recovery Operations, as "the person who gets [Trill's] coffee." *Id.* ¶¶ 15, 26, 40. After Plaintiff filed her first HR complaint, Trill informed one of Plaintiff's colleagues that he was "going to tear [Plaintiff's] world apart." *Id.* ¶ 40. While Trill may not have propositioned Plaintiff for any sexual favors or physically touched her, he certainly "wielded his power over Plaintiff." The Court thus finds that the Amended Complaint alleges sufficiently severe conduct for purposes of stating a hostile work environment claim at this early stage of litigation.

### c. Physically Threatening or Humiliating, or Merely Offensive

"Title VII does not 'attempt to purge the workplace of vulgarity' and '[n]ot all sexual harassment that is directed at an individual because of her sex is actionable.'" *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 207 (4th Cir. 2014) (quoting *Hopkins v. Balt. Gas & Elec. Co.*,

77 F.3d 745, 746 (4th Cir. 2010)).  "[S]imple teasing, offhand comments, and off-color jokes, while often regrettable, do not cross the line into actionable misconduct." *Fairbrook Med. Clinic, P.A.*, 609 F.3d at 328 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)).  However, "highly personalized comments designed to demean and humiliate" may, in some cases, suffice as "personal gender-based remarks."  *Id.* (citing *Conner*, 227 F.3d 179) (noting that "remarks seemed intended to ridicule [a female employee] in the eyes of patients and drug representatives").

Defendant purports that "acts of aggression, belittlement, dismissal, hostility, humiliation, and marginalization" do not satisfy Plaintiff's burden at this stage to allege a hostile work environment.  Reply. 18.  By contrast, Plaintiff contends that Trill's behavior surpasses "callous or rude conduct," and that she has sufficiently alleged that Trill's conduct rises to the level of being "demeaning, discriminatory, and harassing."  Resp. Opp'n 16–17.

Although Defendant argues that Plaintiff's allegations are insufficient, the Court finds, at this preliminary stage, that Plaintiff has sufficiently alleged Trill's use of "highly personalized comments designed to demean and humiliate" her.  *See Fairbrook Med. Clinic, P.A.*, 609 F.3d at 328.  Plaintiff is a woman and serves in a leadership position within Defendant's company.  Am. Compl. ¶ 15.  Trill made multiple statements to and about Plaintiff that, in their best light, may be inferred as gender stereotypes.  *Id.* ¶¶ 23 ("what does your husband say about that"), ¶ 40 ("[Plaintiff is] the person who gets my coffee").  Trill also did not limit the audience for his comments to Plaintiff.  Trill scolded Plaintiff, making the following, and other similar statements to Plaintiff in front of her male colleagues:  "the way you have explained this is like the sky is falling" or "you should have brought this up before."  *See, e.g., id.* ¶¶ 25, 26.  Trill also allegedly spoke about Plaintiff to her male colleagues in her absence, stating that Plaintiff did "not push enough."  *Id.* ¶ 26 .  Trill made similar comments to Plaintiff in front of and to some of her other

colleagues. In particular, Trill replied to a group email stating "I don't know how much clearer I can be," and told Plaintiff's colleague that he was "going to tear [Plaintiff's] world apart." *Id.* ¶¶ 26, 40. Trill also discussed changes to Plaintiff's team with her peers, but not with her, informing Plaintiff's peers that "[Plaintiff] doesn't know." *Id.* ¶ 41.

In light of Plaintiff's position in the company, the fact that her male colleagues were not subjected to this kind of behavior, and Plaintiff's representation of Trill's comments as sometimes public and other times surreptitious, the Court concludes that Trill's alleged behavior was humiliating and designed to undermine and demean Plaintiff in the workplace. As a result, the Court finds that Plaintiff has alleged facts supporting her humiliation, which was severe in terms of its destabilizing effect on Plaintiff's work life.

### d. Unreasonably Interferes with an Employee's Work

Defendant asserts that Plaintiff could not feasibly meet this factor because she continued to perform well. Mem. Supp. 24. This factor is more complex than Defendant appreciates. The "fact that a plaintiff continued to work under difficult conditions is to her credit, not the harasser's." *Okoli*, 648 F.3d at 222. Therefore, the Court does not find that the factor of unreasonable work interference is foreclosed by Plaintiff's ability to continue working in such an environment.

In *Strothers*,[13] the Fourth Circuit considered a plaintiff's terms and conditions of employment "significantly altered" when a supervisor changed the plaintiff's daily arrival time, changed the dress code as applied to the plaintiff, and required the plaintiff to seek permission before leaving her desk, including for bathroom breaks. *Strothers*, 895 F.3d at 331–332. According to the court, "[h]eightened scrutiny, unfair evaluations, and arbitrary dress codes are

---

[13] Although the hostile work environment claim in *Strothers* is on the basis of race rather than sex, the Fourth Circuit's examination of these conditions is instructive as the elements of a hostile environment claim remain the same whether the protected status at issue is race-based or premised on sex. *See Strothers*, 895 F.3d at 328; *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010).

likely to make a job more difficult and trigger responses from workers who feel compelled to protest their treatment, which may further interfere with their work." *Id.* at 332. The Fourth Circuit determined that the net effect of the supervisor's conduct in *Strothers* was an "abusive environment likely to 'detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers.'" *Id.* (citing *Harris*, 510 U.S. at 23); *see also Revak*, 2020 WL 3036548, at *8 (interferences with employment included a supervisor's denying plaintiff's request to attend training, altering timecards, and threatening to change plaintiff's work schedule). Thus, the court concluded in *Strothers*, "[a] reasonable jury could . . . find that [the supervisor's] actions objectively interfered with [the plaintiff's] ability to do her job." *See id.*

As alleged, Trill interfered with multiple facets of Plaintiff's employment. In addition to Trill's comments, described *supra* B(3)(b), Trill allegedly canceled Plaintiff's one-on-one collaboration and training meetings, Am. Compl. ¶¶ 26, 41, ignored her correspondences, *id.* ¶ 39, and transferred some of Plaintiff's duties to other employees thereby diminishing her role within the company. *Id.* ¶ 41. Most notably, Plaintiff claims Trill reduced the number of Plaintiff's direct reports from eight to three employees, jeopardizing Plaintiff's job because directors were required to have at least seven direct reports. *Id.* Not only did Trill reduce the number of Plaintiff's direct reports, but he also refused to promote members of Plaintiff's team, apparently in an effort to cause friction within her team. *Id.* Lastly, Trill assigned Plaintiff a lower rating and criticized her performance without justification, even falsely citing Plaintiff for an act attributable to a different employee. *Id.* ¶ 48. Like the plaintiff in *Strothers*, the Court determines that the net effect of Trill's behavior as alleged detracted from Plaintiff's ability to perform her duties to the best of her ability, discouraged her from remaining on the job, and kept her from advancing in her career.

Thus, the Court finds that, despite Plaintiff's ability to continue performing her duties well, Plaintiff has sufficiently alleged that Trill's conduct unreasonably interfered with her work.

### e. Totality of the Circumstances

When considering the totality of the circumstances, the Court recognizes that Trill's behavior need not be sexual in nature to constitute actionable discrimination, *see Roberts*, 998 F.3d at 121, and that "no single factor is dispositive" *see Bray*, 2024 WL 4278989, at *4 (quoting *Cent. Wholesalers, Inc.*, 573 F.3d at 176). To that end, the Court finds that, drawing all reasonable inferences in Plaintiff's favor, Plaintiff sufficiently alleged that Trill's behavior was severe and pervasive. Key to the Court's reasoning is the fact that "harassment need not be accompanied by a contemporaneous statement of animus to be actionable under Title VII—rather, the connection between animus and conduct may be inferred from the totality of the circumstances." *Strothers*, 895 F.3d at 330–31. The Court considers the pervasiveness of Trill's actions, the offensiveness of the conduct, and that Trill's behavior appears to have specifically targeted Plaintiff, ultimately finding that Plaintiff has plausibly alleged the severity and pervasiveness of Trill's actions, subjectively and objectively.

### 4. Imputable to Employer

Finally, the Court assesses the plausibility of the last element of Plaintiff's Title VII hostile work environment claim, which requires the offensive conduct to be "imputable to the employer." *Cosby*, 93 F.4th at 716.

In order to impute the actions of an employee, in an underlying hostile work environment claim, to the employer, the employer must "have acquired actual or constructive knowledge of the allegedly harassing conduct" and taken "no prompt and adequate remedial action to correct it." *Mikels v. City of Durham*, 183 F.3d 323, 329 (4th Cir. 1999) (alteration omitted); *see Henderson*

*v. Labor Finders of Va, Inc.*, 2013 WL 1352158, at *6 (E.D. Va. Apr. 2, 2013); *Mangum*, 777 F. Supp. 3d at 531. A remedial action need only be "reasonably likely to stop the harassment" to be considered reasonable. *Mangum*, 777 F. Supp. 3d at 531 (quoting *Bazemore v. Best Buy*, 957 F.3d 195, 202 (4th Cir. 2020)).

Here, Defendant omits any mention of this element in its filings—leaving it undisputed. *See generally* Mem. Supp., Reply. Nonetheless, given the Court's responsibility to assess whether the EFAA applies, the Court finds Plaintiff alleged sufficient facts that Defendant had actual or constructive knowledge and failed to take prompt and reasonable remedial action. The Court bases its findings on Plaintiff's two Human Resources complaints, Am. Compl. ¶¶ 29, 42, and the lack of prompt action despite being "aware that Plaintiff . . . w[as] complaining of Trill's discriminatory and harassing conduct." *Id.* ¶ 33.

Therefore, having found all elements of a Title VII hostile work environment claim sufficiently pled from the facts alleged in Plaintiff's Amended Complaint, the Court finds sufficient grounds to preclude arbitration under the EFAA. With the EFAA applicable to the present case, the Court will deny Defendant's instant motion to compel arbitration.

## C. EFAA Applicability to Other Counts

Having found Plaintiff's hostile work environment claim sufficient to deny Defendant's motion to compel arbitration, the Court now considers whether Plaintiff's two remaining Counts, namely sex discrimination (Title VII and VHRA, Count I), Am. Compl. ¶¶ 54–62, and retaliation (Title VII and VHRA, Count III), *id.* ¶¶ 75–84, also escape arbitration. As described below, the Court finds Count I and III preclude arbitration along with Count II.

The issue of whether the EFAA, when applicable, applies only to the particular sexual harassment count or applies broadly to all counts of the case is "yet to be decided by the Fourth

Circuit." *Bray*, 2024 WL 4278989, at \*19.  In *Bray*, the district court found that the plain language of the EFAA, which invalidates arbitration agreements, "with respect to a case . . . [that] relates to . . . the sexual harassment dispute," applied to the entire complaint.  9 U.S.C. § 402(a).  The *Bray* district court viewed the legislature's choice to use "case" rather than "claim" as reflecting the legislature's intent to apply the arbitration exception to all counts of a case, rather than just the sexual harassment dispute, which would require severing a sexual harassment claim and sending the remaining counts to arbitration.  *Bray*, 2024 WL 4278989, at \*20.[14]  This Court agrees with the district court's conclusion in *Bray* and adopts its reasoning here.

Defendant attempts to distinguish the case before the Court from *Bray*.  *See* Reply, 11, 21. Defendant concedes that courts have viewed the EFAA to "preclude all claims included in a case" that relate to sexual harassment.  *Id.* (citing *Bray*, 2024 WL 4278989, at \*7–8).  However, Defendant points out that, in *Bray*, the parties did not dispute the applicability of the EFAA to a hostile work environment claim, which constituted one of three total claims.  Whereas here, Defendant makes no such concession and opposes EFAA applicability to the case in its entirety.

The Court finds Defendant's argument unpersuasive.  As established *supra* Part IV.B, Plaintiff plausibly pled a hostile work environment claim under Title VII, which serves as a basis for the application of the EFAA to her suit.  Like in *Bray*, this Court will extend the EFAA to Plaintiff's other claims.

Accordingly, Defendant's motion to compel arbitration as to Plaintiff's two remaining Counts (Count I and Count III) is denied.

---

[14] The district court in *Bray* viewed the sex discrimination and retaliation claims as originating from the same underlying conduct supporting the sexual harassment claim, which further supported its conclusion to not sever.  *Bray*, 2024 WL 4278989, at \*22–23.  Similar to the claims in *Bray*, Plaintiff's sex discrimination and retaliation claims arise from the same course of alleged conduct by Trill.

## D.  Defendant's Motion to Strike

Lastly, the Court considers Defendant's Motion to Strike.  Defendant premises this motion on the basis that Plaintiff has failed to sufficiently allege a sexual harassment claim.  Mem. Supp. 25; Reply 20–22.  As described *supra* Part IV.B, Plaintiff has stated a *prima facie* claim of a sexual harassment dispute under the EFAA via her Title VII hostile work environment claim.  Therefore, Defendant's argument on this matter is moot, and the Court need not further entertain Defendant's request to strike Plaintiff's allegations of sexual harassment.

## V. CONCLUSION

For the reasons stated above, the Court will deny Defendant's Motion to Compel Arbitration, Stay the Action, and Strike Plaintiff's Sexual Harassment Allegations.  As described, the Court finds that Plaintiff has sufficiently pled a sexual harassment dispute, invoking the EFAA and thus precluding arbitration.

An appropriate Order will accompany this Memorandum Opinion.

_____ /s/

Roderick C. Young

United States District Judge

Date: September 22, 2025
Richmond, Virginia

29